UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK ANTHONY JENKINS                       CIVIL ACTION

VERSUS                                          NO. 18-3122

ROBERT M. MURPHY, *et al.*                       SECTION: M (1)

## **ORDER & REASONS**

Before the Court is a Motion to Dismiss filed by defendant Barron Burmaster ("Burmaster"),[1] to which plaintiff Mark Anthony Jenkins ("Jenkins") responds in opposition,[2] and in support of which Burmaster replies;[3] a Motion to Dismiss filed by defendant Kristyl Treadaway ("Treadaway"),[4] to which Jenkins responds in opposition,[5] and in support of which Treadaway replies;[6] a Motion to Dismiss filed by defendant Robert M. Murphy ("Murphy"),[7] to which Jenkins responds in opposition,[8] and in support of which Murphy replies,[9] and in further opposition to which Jenkins has filed a sur-reply;[10] and a Motion to Dismiss filed by defendant Timothy O'Rourke ("O'Rourke"),[11] to which Jenkins responds in opposition,[12] and in support of which O'Rourke replies.[13] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

---

[1] R. Doc. 15.
[2] R. Doc. 25.
[3] R. Doc. 34.
[4] R. Doc. 19.
[5] R. Doc. 26.
[6] R. Doc. 36.
[7] R. Doc. 23.
[8] R. Doc. 37.
[9] R. Doc. 41.
[10] R. Doc. 47.
[11] R. Doc. 24.
[12] R. Doc. 39.
[13] R. Doc. 51.

## I. BACKGROUND

This action is a collateral attack on a state court judgment. The pertinent facts and procedural history of this case were recited by the Louisiana court of appeal for the fifth circuit in an appeal stemming from the underlying state-court litigation:

> Mark Anthony Jenkins, Sr. and Latasha Jackson began their relationship while Ms. Jackson was in high school. During the time of their sexual involvement, Ms. Jackson became pregnant. On September 18, 1997, Mark Anthony Jenkins, Jr. (hereinafter referred to as "Mark, Jr.") was born to Latasha Jackson. According to Mr. Jenkins, he signed an acknowledgement of paternity establishing filiation to Mark, Jr., and the acknowledgement was filed by November 1997.[1] The following year, on May 31, 1998, Mr. Jenkins and Ms. Jackson were married. At some point, the parties separated, and Ms. Jackson obtained a judgment of child support against Mr. Jenkins on October 27, 2003. Mr. Jenkins and Ms. Jackson were divorced on April 13, 2004.
>
> On February 15, 2012, Mr. Jenkins filed a "Petition for Revocation of Acknowledgement of Paternity, for Damages Due to Fraud under C.C. art. 2315, and for Restoration of Payments Not Due under C.C. art. 2299" in the 24th Judicial District Court. In his petition, Mr. Jenkins alleged that Ms. Jackson fraudulently concealed the truth about the paternity of Mark, Jr. and obtained child support while knowing that another man, Samuel Scott, was the biological father. He also alleged that he mistakenly signed the acknowledgement of paternity for Mark, Jr. In addition, Mr. Jenkins sought to have his acknowledgement of paternity revoked, monetary damages from Ms. Jackson, and a court order for a paternity test for himself and Mark, Jr.
>
> In opposition to the petition for revocation, Ms. Jackson filed an "Exception of Prescription and/or No Cause/Right of Action." In her exception, Ms. Jackson argued that Mr. Jenkins' right to revoke the formal act of acknowledgement was perempted because he failed to disavow Mark, Jr. within 180 days of the marriage; thus, he had neither a right of action nor cause of action to revoke the acknowledgement. The matter was heard by a domestic commissioner. In a judgment rendered on July 5, 2012, the domestic commissioner sustained the exception of prescription but overruled the exceptions of no cause of action and no right of action. Mr. Jenkins filed a "Motion for New Trial," which was heard on September 13, 2012. A new trial was granted, and the matter was set for arguments.[2] On October 15, 2012, the domestic commissioner rendered a judgment in favor of Mr. Jenkins, which overruled Ms. Jackson['s] exception of prescription. Ms. Jackson objected to the domestic commissioner's ruling.
>
> The matter was heard by the trial court on January 16, 2013. In a judgment rendered on January 22, 2013, the trial court overruled Ms. Jackson's exception of

prescription. The trial court also ordered genetic testing and assigned costs for the test. Ms. Jackson sought supervisory review of the trial court's judgment.

In *Jenkins v. Jackson*, 13-296 (La. App. 5 Cir. 5/14/13) (unpublished writ disposition), *writ not considered*, 13-1835 (La. 8/22/13); 122 So.3d 1009, this Court granted Ms. Jackson's writ application in part, reversing the trial court's ruling on the exception of prescription and rendering a ruling that sustained the exception. Citing *J.P. v. C.E.*, 12-20 (La. App. 3 Cir. 5/2/12); 94 So.3d 107, this Court found that the two-year prescriptive period in La. R.S. 9:406 should apply prospectively from its effective date, which was August 15, 2008. Because Mr. Jenkins did not file his petition to revoke until February 15, 2012, which was well over the two years from the effective date, Mr. Jenkins' action to revoke his acknowledgement of paternity was prescribed. This Court also vacated the order for genetic testing and remanded the matter to the trial court for determination of whether Mr. Jenkins was entitled to the genetic testing pursuant to applicable law, specifically La. R.S. 9:396. Upon remand, Mr. Jenkins filed a "Motion for Court to Rule on Petitioner's Previous Motion for Genetic Testing under R.S. 9:396." The trial court granted the motion and ordered that Mr. Jenkins, Ms. Jackson and Mark, Jr. submit to the genetic testing.[3]

On September 11, 2013, Mr. Jenkins filed a "Motion to Amend Petition to Annul Judgment of Juvenile Court."[4] In that motion, Mr. Jenkins alleged that he filed a petition to nullify child support in the juvenile court; however, he was informed by the court that the nullification had to take place in the district court. Mr. Jenkins sought to amend his original petition filed, which was filed in the trial court, to include a request for damages for mental anguish and nullification of the judgment of child support rendered in the juvenile court. The motion was heard by the trial court and granted on November 25, 2013.

Mr. Jenkins subsequently filed a "Petition for Nullification of the Judgment of the Fifth Circuit which Reversed a Judgment of This Court" on June 25, 2014. In that petition, Mr. Jenkins sought to annul the portion of the May 14, 2013 writ disposition of this Court that found his right to revoke the acknowledgement prescribed. He alleged that his acknowledgement of paternity was signed at the hospital after Mark, Jr. was born, but the only copy of the acknowledgement was destroyed during Hurricane Katrina, while in the possession of the State.[5] Mr. Jenkins sought to have the judgment of this Court annulled on the basis that it did not consider whether the form of the acknowledgement was by authentic act.

On October 14, 2014, Mr. Jenkins filed a "Rule to Show Cause Why Plaintiff's Name Should Not Be Removed from the Birth Certificate and Why An Expert Should Not be Appointed to Calculate Probability of Paternity." In that pleading, Mr. Jenkins requested that, since the genetic testing ordered by the court showed that he cannot be Mark, Jr.'s biological father, the testing be admitted into evidence, the signing of the birth certificate be given no legal effect, and his name be removed from the birth certificate. Mr. Jenkins also requested that an expert

3

be allowed to use Samuel Scott's DNA report[6] to calculate the probability of paternity, and Ms. Jackson be cast with the costs of the genetic testing.

In opposition to Mr. Jenkins' petition to revoke acknowledgement and rule to show cause, Ms. Jackson filed an "Exception of Prescription," arguing that Mr. Jenkins' cause of action was prescribed under the ten-year liberative prescriptive period. She also argued that fraud was not a procedural avenue that could be used to vitiate the birth certificate; specifically, Mr. Jenkins could have ascertained the truth regarding his paternity of Mark, Jr. prior to signing the birth certificate.

A hearing on Mr. Jenkins' rule to show cause was held on January 21, 2015. In a judgment rendered on February 4, 2015, the trial court denied the rule and made a handwritten notation that "no authority [was] provided by mover to show this court that this is the proper procedure to alter or amend birth certificates. Dept. of Vital Records is not a party." In a separate judgment rendered on the same date, the trial court overruled Ms. Jackson's exception of prescription, admitted the genetic testing into evidence, found that Mr. Jenkins is not the father of Mark, Jr., and ordered Ms. Jackson to reimburse Mr. Jenkins for the total costs incurred for the testing, which included attorney's fees and court costs. The trial court also ordered a rule to show cause hearing to show why the birth certificate should not be altered and why DCFS should not authorize the calculation of Mr. Scott's probability of paternity for Mark, Jr.

Ms. Jackson filed a "Motion and Order for Appeal" on February 24, 201[5], seeking appellate review of the trial court's rulings that overruled her exception of prescription and ordered her to pay the costs incurred to prove paternity. The motion was granted by the trial court, and an appeal was lodged. This Court dismissed Ms. Jackson's appeal through an order on May 26, 2015, finding that the trial court's February 4th judgments were not final judgments. Ms. Jackson was allowed 30 days to file an appropriate writ application seeking review of the interlocutory rulings.

After the trial court rendered its February 4th judgments, Mr. Jenkins filed a "Petition for Alternation of a Birth Certificate to Remove Petitioner's Name as Father of the Child, Void His Signature, and Change the Surname of the Child" on February 9, 201[5]. Subsequently, he filed a "Motion to Amend Petition a Third Time." In that motion, Mr. Jenkins sought permission to add allegations against DCFS, mainly that it failed to establish paternity prior to obtaining a judgment of child support against him for Mark, Jr. Mr. Jenkins also filed a "Motion for Order to Calculate the Probability of Paternity." He claimed that he obtained permission from the juvenile court to allow the use of the DNA report for Mr. Scott and requested that the DNA information be used in the instant matter.

On June 23, 2015, Ms. Jackson filed a supervisory writ with this Court, seeking review of the trial court's February 4, 201[5] judgments. Ms. Jackson alleged that

the trial court erred when it overruled her exception of prescription and found Mr. Jenkins not to be the legal father of Mark, Jr. She argued that Mr. Jenkins' cause of action was prescribed under La. R.S. 9:392 and 9:406.[7] Ms. Jackson further alleged that the trial court erred in ordering her to reimburse Mr. Jenkins for the costs incurred in obtaining the genetic testing. In opposition to the writ application, Mr. Jenkins contended the prior writ disposition did not preclude his claim to rebut the presumption of legal paternity created by signing Mark, Jr.'s birth certificate because there was no evidence of an authentic act of acknowledgement.

In *Jenkins v. Jackson*, 15-399 (La. App. 5 Cir. 6/23/15) (unpublished writ disposition), *writ denied*, 15-1622 (La. 9/4/15); 177 So.3d 709,[8] Ms. Jackson's writ application was granted in part and denied in part. This Court found that Mr. Jenkins had judicially confessed, in more than one pleading, that he signed both the birth certificate and an acknowledgement of paternity at the time of Mark, Jr.'s birth in 1997, and that Mr. Jenkins' confession constituted full proof against him. Consequently, this Court found that Mr. Jenkins' subsequent allegations that he could not remember signing any acknowledgement or that no authentic act of acknowledgement existed could not be considered for purposes of pursuing another attempt to revoke or rebut his acknowledgement of legal paternity in this matter. Thus, Mr. Jenkins' cause of action was again found to be prescribed pursuant to La. R.S. 9:406. The trial court's ruling concerning prescription was reversed, and Ms. Jackson's exception was sustained as to Mr. Jenkins' claim to revoke or rebut his acknowledgement of legal paternity. This Court further found no error in the portions of the trial court's judgment that found Mr. Jenkins was not the father of Mark, Jr., based upon the paternity test report, and ordered Ms. Jackson to reimburse Mr. Jenkins for the costs incurred in obtaining the genetic testing and court costs; however, the order for Ms. Jackson to pay Mr. Jenkins' attorney's fees was vacated.

On October 7, 2015, Mr. Jenkins filed a "Motion to Dismiss the Allegations against DCFS Contained in the Third Amendment to the Petition and Motion to Rebut Finding of Judicial Confession to Signing 'An Acknowledgment' other Than the Birth Certificate." In the motion, Mr. Jenkins alleged that Ms. Jackson and DCFS judicially confessed in the juvenile court proceeding that there was no authentic act of acknowledgement, and the June 23rd writ disposition from this Court was not the law of the case. He sought to dismiss his allegations against DCFS in his third amendment to his petition and sought admission of the judicial confessions of DCFS and Ms. Jackson into evidence for the purposes of rebutting this Court's legal paternity finding. The motion was heard before the trial court on October 16, 2015. In a judgment rendered on February 1, 2016, the motion was denied.

Subsequently, in the same proceeding, Mr. Jenkins filed a "Petition for Nullification 1) Request Nullification of Fifth Circuit's Ruling for Lack of Jurisdiction and for Fraud and Ill-Practice in the Writ Application, 2) Request a

Finding that R.S. 9:406(B)(2) is Unconstitutional, and 3) Request an Injunction against Enforcement of the Rulings" on March 10, 2016. Among his numerous allegations, Mr. Jenkins alleged that the rulings of this Court in the prior writ dispositions regarding the existence of an authentic act of acknowledgement and legal paternity were null because this Court lacked the subject matter jurisdiction to consider the legal paternity of Mark, Jr. He further alleged that Ms. Jackson's attorney obtained the rulings in her favor through fraud and ill practices because she misrepresented the law by claiming that the signing of the birth certificate made him the legal father of Mark, Jr. and by failing to enter the judicial confession of Ms. Jackson from the juvenile court that there was no authentic act of acknowledgement. He maintained that enforcement of the rulings obtained through fraud and ill practices would be unconscionable and inequitable because injustice was brought about by depriving him of notice and the right to be heard. Mr. Jenkins also alleged that La. R.S. 9:406(B)(2) was unconstitutional because it did not provide for a suspension of the two-year prescriptive period to revoke an authentic act of acknowledgement obtained by fraud.

On April 5, 2016, Ms. Jackson filed an "Exception of No Cause of Action, Res Judicata, and for Sanctions." Ms. Jackson argued that Mr. Jenkins' petition for nullification did not state a cause of action upon which relief could be granted. She claimed that Mr. Jenkins' grounds for nullifying the rulings were baseless; thus, she requested that the action be dismissed. She also argued that Mr. Jenkins' action sought to re-litigate issues that were already considered by this Court and the supreme court. As a result of the repeated litigation of the same issues and the personal attack upon her attorney, Ms. Jackson requested sanctions against Mr. Jenkins. The exception was heard before the trial court on May 16, 2016. On May 24, 2016, the trial court sustained the exceptions of no cause of action and *res judicata* and denied the request for sanctions.[9] The instant appeal followed.

\* \* \*

On appeal, Mr. Jenkins alleges the trial court erred in sustaining the peremptory exceptions of no cause of action and *res judicata*, which resulted in the dismissal of his action. He argues that the litigation has focused entirely on whether the two-year prescriptive period of La. R.S. 9:406 applied to an act executed in 1997, not whether there had actually been an authentic act of acknowledgement executed by him.

\* \* \*

Mr. Jenkins alleges the trial court erred in sustaining Ms. Jackson's exception of no cause of action. He claims that his petition for nullification is authorized by La. C.C.P. art. 2006 and is not simply another request for review of this Court's previous rulings. Mr. Jenkins avers that the grounds for nullity raised in his petition are mainly based upon lack of subject matter jurisdiction over the issue of

6

legal paternity and deprivation of the right to be heard through having an opportunity to present evidence. When taking the allegations of the petition as true, Mr. Jenkins claims that his petition stated valid causes of action.

---

[1] Mr. Jenkins alleges that he signed an acknowledgement of paternity in his petition for revocation.

[2] In his ruling, the domestic commissioner found that Mr. Jenkins' right to revoke the acknowledgement could not prescribe pursuant to the version of La. R.S. 9:406 in effect at the time of the signing of the acknowledgement. In 2007, La. R.S. 9:406(B) provided,

> At any time, a person who executed an authentic act of acknowledgment may petition the court to rescind such acknowledgment only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, material mistake of fact or error, or that the person is not the biological parent of the child.

[3] The trial judge made a handwritten notation that the parties "dispensed with [the determination of Mr. Jenkins' right] in light of [the] hearing held."

[4] This was the second request to amend Mr. Jenkins' petition. In the first amendment, the Department of Children and Family Services (hereinafter referred to as "DCFS") was added to the action as an indispensable party.

[5] Mr. Jenkins' reference is to the Louisiana Department of Health.

[6] Mr. Jenkins obtained Mr. Scott's DNA report from another, unrelated matter in the juvenile court.

[7] Ms. Jackson also argued that Mr. Jenkins should have actually filed a disavowal action pursuant to La. C.C. art. 195, not an action to revoke an acknowledgement, because he filiated himself to Mark, Jr. by marrying her after Mark, Jr. was born. However, she maintained that action would have also been prescribed.

[8] On writ of certiorari to the supreme court, Justice Hughes dissented, stating,

> [T]he seemingly untimely review and intervention of the Court of Appeal to decide an issue not addressed in the trial court's judgment, based on the concept of a "judicial confession," is clearly wrong given the DNA evidence, the multiple pleadings and amendments thereto, the stipulation of the parties, and the inability of DCFS to produce an authentic act of acknowledgment. This is not justice but judicial "gotcha." These matters are best left to the trial court for trial on the merits and development of a full record.
>
> The continued efforts of DCFS given the DNA results in the record are also questionable.

(Emphasis in original).

[9] The initial judgment signed by the trial court did not contain the required decretal language required to render the judgment final because it failed to indicate the specific relief granted. *See Morraz-Blandon v. Voiron*, 16-112 (La. App. 5 Cir. 8/25/16); 199 So.3d 1220, 1221. As such, after the appeal was lodged, we issued an order instructing the trial court to amend the judgment to include the necessary decretal language. The trial court signed an amended judgment on November 7, 2016 to include decretal language that dismissed Mr. Jenkins'

> petition with prejudice. (*See generally, Rousseau v. Emp'rs Mut. of Wausau*, 493 So.2d 121, 124 (La. App. 5th Cir. 1986), where this Court held that a judgment sustaining an exception of no cause of action is a final, appealable judgment, even in cases where only a portion of the case is dismissed by the exception.) The amended judgment corrected the deficiency in the judgment. Accordingly, we find that a final judgment has been rendered and is reviewable on appeal.

*Jenkins v. Jackson*, 216 So. 3d 1082, 1084-89 (La. App.), *writ denied*, 224 So. 3d 984 (La. 2017).

In its opinion regarding Jenkins' appeal of the dismissal of his nullity action, the Louisiana court of appeal for the fifth circuit held that it had subject-matter jurisdiction to enter the rulings regarding paternity in the July 31, 2015 order pertaining to Jacksons' writ application.[14] *Id.* at 1089-90. The court explained:

> Mr. Jenkins alleges this Court lacked the subject matter jurisdiction to determine his legal paternity of Mark, Jr. when reviewing Ms. Jackson's supervisory writ applications. As a result, he contends that the writ dispositions rendered by this Court are null and void.
>
> The nullity of a final judgment may be demanded for vices of either form or substance. La. C.C.P. art. 2001. A final judgment shall be annulled if it is rendered by a court which does not have jurisdiction over the subject matter of the suit. La. C.C.P. art. 2002(A)(3). Except as otherwise provided in La. C.C.P. art. 2003, an action to annul a judgment on the grounds for vices of form may be brought at any time. La. C.C.P. art. 2002(B).
>
> The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties. *Canal/Claiborne, Ltd. v. Stonehedge Dev., LLC*, 14-664 (La. 12/9/14); 156 So.3d 627, 632, citing La. C.C.P. art. 3. Thus, a judgment rendered by a court with no jurisdiction over the subject matter of the action or proceeding is void. *Id*.
>
> According to La. Const. art. V, § 10, except as otherwise provided by the constitution, a court of appeal has appellate jurisdiction of all civil matters appealed, including matters from family and juvenile courts, and supervisory jurisdiction over cases which arise within its circuit. A district court has original jurisdiction over all civil and criminal matters, with the exception of the excluded cases listed in the constitution. La. Const. art. V, § 16.

---

[14] The Louisiana court of appeal for the fifth circuit mistakenly referred to the order as having been issued on June 23, 2015, when it was actually entered on July 31, 2015. *See* R. Doc. 36-1 at 21-24.

> In the instant matter, this Court reviewed supervisory writ applications arising from Mr. Jenkins' petition for revocation of acknowledgement of paternity, which was properly filed in the 24th Judicial District Court.[10] The district court had the jurisdiction to determine both the legal and biological paternity of Mark, Jr. in its review of Mr. Jenkins' petition to revoke. Because the 24th Judicial District Court is a district court within our circuit, this Court had the supervisory jurisdiction to render determinations relevant to Mr. Jenkins' petition, which included the legal and biological paternity of Mark, Jr. As such, despite his assertion that this Court lacked subject matter jurisdiction, Mr. Jenkins' legal paternity of Mark, Jr. was properly before this Court for review in the two supervisory writ applications at issue.[11]
>
> Mr. Jenkins' contention that this Court had no subject matter jurisdiction to determine his legal paternity of Mark, Jr. lacks merit beyond a doubt because no set of facts could have been proven in support of his claim. Thus, there is no relief that could be granted to Mr. Jenkins, and the claim should have been dismissed. *See Guidry* [*v. Hanover Ins. Co.*, 09-220 (La. App. 5 Cir. 11/20/09); 28 So.3d 426, 428]. Accordingly, we find that the trial court properly sustained Ms. Jackson's exception of no cause of action on the claim of lack of subject matter jurisdiction raised in Mr. Jenkins' petition for nullification.
>
> [10] The Juvenile Court of Jefferson Parish would not have been the proper venue to file such a petition. (*See State v. James*, 99-1670 (La. App. 4 Cir. 2/23/00); 757 So.2d 811, 813, where the court held, "There is no authority in Ch.C. art. 311 or any other article of the Children's Code for the filing of a petition to nullify an acknowledgment of paternity in Juvenile Court....")
>
> [11] We note that both Mr. Jenkins and Ms. Jackson were given the fair opportunity to argue their positions in their respective briefs, as no oral arguments were heard for Ms. Jackson's supervisory writ applications. This Court considered the arguments presented by both parties.

*Jenkins v. Jackson*, 216 So. 3d at 1089-90.

On March 22, 2018, Jenkins filed this action in federal court again arguing that the Louisiana court of appeal for the fifth circuit lacked subject-matter jurisdiction to determine legal paternity in its July 31, 2015 order regarding Jackson's writ application.[15] Jenkins names as defendants: O'Rourke, an assistant district attorney involved in the state-court litigation;[16] Murphy, a judge on the Louisiana court of appeal for the fifth circuit;[17] Treadaway, Jackson's attorney in the state-court litigation;[18] and Burmaster, a judge on the 24th Judicial District Court,

---

[15] R. Doc. 1 at 1-3.
[16] *Id.* at 4.
[17] *Id.* at 3.
[18] R. Doc. 4 at 1-2.

9

Parish of Jefferson, State of Louisiana.[19] Jenkins alleges that the defendants conspired to deprive him of his rights secured by the Fifth and Fourteenth Amendments to the Constitution of the United States of America by procuring the July 31, 2015 order from the Louisiana court of appeal when that court allegedly lacked subject-matter jurisdiction to rule on the issue of paternity.[20] Jenkins asserts that his claims are brought under 42 U.S.C. §§ 1893, 1985, 1986, and 1988, and that he seeks a judgment that the July 31, 2015 ruling of the state court is null and void for lack of subject-matter jurisdiction, and monetary damages.[21]

## II. PENDING MOTIONS

Burmaster, Treadway and O'Rourke filed motions to dismiss arguing that this Court lacks subject-matter jurisdiction over Jenkins' action by operation of the *Rooker-Feldman* doctrine.[22] The defendants argue that Jenkins is a "state-court loser" who filed this action in federal court to collaterally attack a state-court judgment. Jenkins argues that his claims are not barred by the *Rooker-Feldman* doctrine because the state-court judgment he attacks, the July 31, 2015 order issued by the Louisiana court of appeal for the fifth circuit, is void for lack of subject-matter jurisdiction.

## III. LAW & ANALYSIS

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits "a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also* Fed. R. Civ. P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

---

[19] *Id.* at 1.
[20] R. Docs. 1 & 4.
[21] R. Doc. 1 at 3 & 17-19; R. Doc. 4 at 3-5.
[22] R. Docs. 15, 19 & 24. Murphy also filed a motion to dismiss but did not raise the *Rooker-Feldman* doctrine. *See* R. Doc. 23. However, this Court's finding that it lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine also applies to Jenkins' claims against Murphy.

supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* The party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exist. *Id.*

Pursuant to the *Rooker-Feldman* doctrine, "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Colum. Ct. of App. v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The four elements of the *Rooker-Feldman* doctrine are: (1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceeding began; and (4) the federal suit requests review and reversal of the state court judgment. *Id.*

Further, "[a] state court judgment is attacked for purposes of *Rooker-Feldman* 'when the [federal] claims are "inextricably intertwined" with a challenged state court judgment,' or where the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment.'" *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (*per curiam*) (alteration in original) (citations omitted). However, the *Rooker-Feldman* doctrine "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached.'" *Id.* (quoting *Exxon Mobil*, 544 U.S. at 293). The doctrine "generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment." *Id.* "Nonetheless, a party cannot escape *Rooker-Feldman* by 'casting ... a complaint in the form of a civil rights action.'" *Houston v. Queen,* 606 F. App'x

11

725, 730 (5th Cir. 2015) (quoting *Liedtke*, 18 F.3d at 317). When constitutional questions arise in state-court proceedings, federal appellate review is available only in the United States Supreme Court. *Moore v. Whitman*, 2018 WL 3602774, at *2 (5th Cir. July 26, 2018) (citing *Exxon Mobil*, 544 U.S. at 284).

All four elements of the *Rooker-Feldman* doctrine are satisfied in this case. Jenkins lost in the state court. He alleges injuries caused by that judgment, which was rendered before he filed this action, and he specifically asks this Court to reverse that judgment.

In an attempt to escape the applicability of the *Rooker-Feldman* doctrine, Jenkins argues that the "void *ab initio* exception" to the doctrine applies, contending that the July 31, 2015 order that he attacks is void for lack of subject-matter jurisdiction. Whether the Fifth Circuit recognizes the "void *ab initio* exception" to the *Rooker-Feldman* doctrine is debatable. In *Matter of Cleveland Imaging & Surgical Hosp., L.L.C.*, 690 Fed. App'x 283 (5th Cir. 2017), the court stated that it "has neither endorsed nor rejected the *ab initio* exception" and noted that its "sister circuits are split on the issue." *Id.* at 286 (citations omitted). The court declined to "reach this issue" because it was clear that the state court had jurisdiction to enter the order at issue. *Id.* Three months later, in *Burciaga v. Deutsche Bank Nat'l Trust*, 871 F.3d 380, 385-86 (5th Cir. 2017), the court cited the void *ab initio* exception as an alternate reason that the *Rooker-Feldman* doctrine was inapplicable, without discussing whether the Fifth Circuit now accepts the exception.

In this case, because it is clear that the July 31, 2015 order Jenkins questions is ***not*** void for lack of subject-matter jurisdiction, it is not necessary now for this Court to deduce the Fifth Circuit's current position on the void *ab initio* exception. Indeed, Jenkins filed a motion in the 24th Judicial District Court pursuant to Louisiana Code of Civil Procedure article 2002 seeking an order declaring the July 31, 2015 order null and void for lack of subject-matter jurisdiction.

*Jenkins*, 216 So. 3d at 1087-88. The trial court sustained Jackson's exception of no cause of action, and Jenkins appealed. *Id*. at 1088. On appeal, the Louisiana court of appeal held that it did have subject-matter jurisdiction to render the July 31, 2015 order. *Id.* at 1090. Jenkins filed a writ of *certiorari* with the Louisiana Supreme Court challenging that ruling, and that court denied writs. *Jenkins v. Jackson*, 224 So. 3d 984 (La. 2017). Thus, Jenkins has fully litigated in the state courts the issue of whether the judgment he now seeks to overturn was void *ab initio*. The Louisiana state courts have held that it was not. In the lawsuit pending before this Court, Jenkins asks this Court to function as a super-appellate court and reverse the decisions of the Louisiana state courts. This is precisely the type of action that is barred by the *Rooker-Feldman* doctrine. As such, this Court lacks subject-matter jurisdiction over Jenkins' suit.

**IV. CONCLUSION**

Accordingly, IT IS ORDERED that Burmaster's motion to dismiss (R. Doc. 15) is GRANTED, and Jenkins' claims against him are DISMISSED WITH PREJUDICE;

IT IS FURTHER ORDERED that Treadaway's motion to dismiss (R. Doc. 19) is GRANTED, and Jenkins' claims against her are DISMISSED WITH PREJUDICE;

IT IS FURTHER ORDERED that Murphy's motion to dismiss (R. Doc. 23) is GRANTED, and Jenkins' claims against him are DISMISSED WITH PREJUDICE; and

IT IS FURTHER ORDERED that O'Rourke's motion to dismiss (R. Doc. 24) is GRANTED, and Jenkins' claims against him are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 27th day of November 2018.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE